IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-1579-RBJ

TEVA M. EVANS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

    Defendant.

---

ORDER

---

    This matter is before the Court on review of the Commissioner's decision that denied plaintiff Teva Evans' application for Supplemental Security Income for disability benefits pursuant to Title XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on February 22, 2011. The Court apologizes to the parties for the delay in resolving the case.

**Standard of Review**

    This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

1

supporting it." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007). Evidence is not substantial if it is "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Facts**

Plaintiff Teva Evans was born on March 11, 1987. She was 19 years old at the alleged disability onset date. Ms. Evans attended special education classes through the tenth grade of school, her highest level completed. She has failed all four General Equivalency Degree ("GED") examinations she has taken. She has no past relevant work. R. at 32.

Plaintiff applied for disability benefits on August 10, 2006, alleging disability with an onset date of August 10, 2006 due to being a slow learner with difficulties reading, understanding, spelling and writing and because of back problems that caused her pain. R. at 19. The administrative record contains extensive documentation of Ms. Evans' medical treatment for these complaints through 2008, as well as for additional arising health concerns. In relevant part, the record indicates that plaintiff received:

- Medical treatment for back and left knee pain at Centennial Health Center between June 2005 and January 2006. R. at 236-37, 241-43.

- A physical consultative examination ("CE") in January 2007 by Velma Campbell, M.D., who diagnosed plaintiff with chronic thoracolumbar back pain, chronic left knee pain with medial meniscal tear, episodic tachycardia and history of Wolfe-Parkinson-White syndrome (heart arrhythmia). R. at 256. Dr. Campbell noted that plaintiff's musculoskeletal conditions were due to her left knee condition and mechanical back

dysfunction complicated by obesity. *Id.* Dr. Campbell provided the following medical source statement opinion as to appropriate accommodations for Ms. Evans' ailments:

- o Carrying 40 pounds less than one hour a day and 20 pounds occasionally;
- o Limit walking and standing to less than four hours a day;
- o Climb stairs only occasionally in frequency; and
- o Bend and stoop only occasionally in frequency. *Id.*

• Medical care at the Arkansas Valley Regional Medical Center ("AVRMC") between 2005 and 2009. The record indicates that Ms. Evans received treatment at AVRMC for her left knee meniscal tear, possible depression, back and chest pain and neck pain. R. at 247, 448, 454, 496. Plaintiff's left medial meniscus tear was diagnosed through an MRI at this hospital on December 16, 2005. R. at 247-48. AVRMC x-rays of her thoracic and lumber spine were normal, and x-rays of her cervical spine showed disk space narrowing of C4-5. R. at 249, 511. Plaintiff received emergency treatment on March 16, 2008 for a nondisplaced transverse fracture of her left foot at the fifth metatarsal. R. at 505-06. In June 2008 Jeffrey Perry, M.D, saw Ms. Evans after she admitted to the emergency room for possible seizures. R. at 581-583. During this visit Dr. Perry documented her medical history, including her stressful parental relationships, her history of medication for depression, her foot fracture and her meniscal tear. *Id.*

• Medical treatment from several different providers at the Valley Wide Medical Centers, including Jason Morgenson, M.D., Jeffrey Perry, M.D., as well as from Edward Fitzgerald, M.D., Front Range Orthopedic, between September 2006 and November 2008 for left knee pain from an ACL tear and torn meniscus, back pain, pelvic pain, a Jones

fracture to her left foot and other health concerns. R. at 422, 424, 429, 463-66, 524, 532-35, 537-544.

- A medical determination of disability by Dr. Morgenson on November 2, 2006 for Ms. Evans' application for benefits from the Colorado Department of Human Services. Dr. Morgenson opined that she had been disabled since March of 2005 and that she would be unable to work for six to eight months because of her learning disability and illiteracy, torn meniscus in her left knee and knee instability. R. at 465-66. In December 2007 Dr. Morgenson again determined that Ms. Evans was disabled and unable to work because of her left knee meniscal tear, learning disability, third grade reading level and an ovarian cyst. R. at 463-64.

- A clinical observation on May 29, 2009 by Dr. Fitzgerald, based on review of x-rays from March 2008 through May 2009, that Ms. Evans' foot fracture "has really gone on to nonunion," *i.e.*, would not heal. R. at 518. On November 17, 2008 Dr. Perry again recorded the non-union Jones fracture of plaintiff's foot. R. at 554. Dr. Perry also diagnosed Ms. Evans with depression and noted in her file that he was considering medication in 2008 and 2009. R. at 565, 582.

- A Medical Source Assessment by Dr. Perry on November 18, 2008 in which he diagnosed her pelvic pain, oligomenorrhea, back pain, depression/anxiety, non-healing Jones fracture of left foot, left knee pain with history of meniscal injury and Wolf-Parkinson White syndrome. Dr. Perry provided the following medical source statement opinion as to appropriate accommodations for Ms. Evans' ailments:
    o   Maximum lifting and carrying limited to five pounds per day;
    o   Sitting limited to 30 minutes at one time for a total of two hours out of an eight

> hour workday;
> - Standing limited to 30 minutes at one time for a total of two hours out of an eight hour workday;
> - Stooping and squatting limited to less than ten repetitions per day;
> - Crawling and kneeling limited to never.

Dr. Perry also opined that the plaintiff's depression would interfere with her employment and confine her to her home for two to three days per week. He determined that her impairments had been at the severity level driving his recommendations since September of 2005. R. at 565.

Additionally, the administrative record reveals a long history of treatment for a variety of mental health issues.

- Medical and social services records from when the plaintiff was a minor reveal extensive past mental health treatment related to sexual and physical abuse. R. at 242-418. Care included several different psychoactive medications, counseling and special education. *Id*.

- Plaintiff received mental health treatment at the Southeast Mental Health Center between October 2007 and October 2008. R. at 468-77, 513-17. However, she experienced transportation problems that limited her ability to attend some appointments with her counselors. R. at 468, 470, 473. She also expressed concerns about her ability to pay for treatment but was assured that treatment could be provided on a sliding scale or for no charge. R. at 473. Treatment frequently focused on plaintiff's immediate sources of stress, but Ms. Evans' also raised her history of abuse with a counselor in June of 2008. R. at 515.

- On May 13, 2008 William E. Morton, Psy. D., performed a Consultative Examination ("CE") at the request of Colorado Disability Determination Services. R. at 478-82. Dr. Morton diagnosed Ms. Evans with Major Depressive Disorder (Recurrent, Severe without Psychotic Features), Adjustment Disorder with Mixed Anxiety and Borderline Intellectual Functioning. R. at 481. Dr. Morton briefly noted a history of neglect and physical and sexual abuse in her family of origin. R. at 478.
- On December 19, 2008 David Benson, Ph.D., performed a psychological evaluation of plaintiff at the request of Colorado Rehabilitation Services. R. at 567-79. He reviewed unidentified prior records and elicited a detailed narrative history from plaintiff of her troubled childhood. Dr. Benson diagnosed Schizoaffective Disorder, Post Traumatic Stress Disorder, Poly-Substance Dependence, Disorder of Written Expression and Borderline Personality Disorder. R. at 578.

Plaintiff's disability claim was denied administratively and she filed a timely written request for a hearing on March 30, 2007. R. at 89, 19. Her case was initially heard before ALJ Paul J. Keohane on June 11, 2008. R. at 64. That hearing was adjourned to allow the claimant to gather additional medical records. R. at 85. After further development of the administrative record, Ms. Evans' case was heard before ALJ E. William Shaffer, hereinafter "the ALJ", on February 26, 2009. R. at 33, 36. The ALJ issued an unfavorable ruling on March 24, 2009. R. at 33. Ms. Evans timely appealed this decision to the Appeals Council, which denied her request for review on May 06, 2010. R. at 1. The instant appeal followed.

The ALJ followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4) to determine if Ms. Evans was disabled. *See* 20 C.F.R. § 404.1520(a)(4). At step

one, the ALJ found that the claimant had not engaged in substantial gainful activity since August 10, 2006, when she applied for benefits. R. at 21. At step two, he determined that:

> The claimant has the following severe impairments: a meniscal tear of the left knee; a fracture of the fifth metatarsal in the left foot; obesity; an affective disorder (a major depressive disorder vs. a schizo affective disorder); borderline intellectual functioning; a post-traumatic stress disorder; a borderline personality disorder; a disorder of written expression.

R. at 21-22. At step three, he found that these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 22.

Step four requires an ALJ to assess a claimant's residual functional capacity ("RFC") in light of medical impairments and determine if the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ made the following RFC assessment:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that standing and walking would be for two to four hours, and sitting would be for six hours, during an eight-hour workday, with no walking on uneven surfaces; there would be no climbing of ladders, ropes or scaffolds and occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching and crawling; and the work would be unskilled and would involve moderate limitations in the ability to sustain interpersonal contact with the public, coworkers and supervisors, and moderate limitations in the ability to sustain concentration, focus and attention.

R. at 24. Plaintiff had no past relevant work to consider under step four. R. at 32.

In step five, the ALJ considers the claimant's age, education, work experience and RFC to determine if the claimant is able to adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). If not, then she is disabled within the meaning of the Act. *Id*. The ALJ found that Ms. Evans is capable of making a successful adjustment to work that exists in significant numbers in the national economy. R. at 32. This determination relied heavily on testimony given by a Vocational Examiner ("VE"), Martin Rower, at the hearing. The VE testified that a hypothetical individual of plaintiff's age, education and vocational history that shared her RFC could perform

a number of unskilled, light and sedentary positions in the workforce. R. at 61-63. The ALJ thus denied Ms. Evans' claim for disability benefits. R. at 33.

## Conclusions

This case primarily concerns the ALJ's analysis at steps four and five of the five-step evaluation process. 20 C.F.R. §404.1520(a)(4)(iv)-(v). Plaintiff's claims span three subjects: weighting of medical opinions, weighting of psychological opinions and assessment of the RFC.

### I.   Whether the ALJ Properly Weighted the Medical Opinions

#### Treating Physician Jeffrey Perry, MD

Plaintiff argues that reversal or remand is required in this case because the ALJ failed to weight properly Dr. Jeffrey Perry's medical opinions as to Ms. Evans' level of disability and on-the-job capabilities. The Court agrees.

Plaintiff contends that Dr. Perry's opinions should have been afforded controlling weight under 20 C.F.R. § 416.927(d)(2). She alleges that the ALJ failed to correctly apply the legal standards set forth in 20 C.F.R. § 416.927(d)(2) because he did not explicitly evaluate her case using the regulatory framework, which requires the Commissioner to give controlling weight to the opinion of the treating physician as long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). However, it is well established that the ALJ need not address each factor under 20 C.F.R. § 416.927(d), expressly or at length, so long as "good reasons" are given in a decision. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see also* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("[T]here is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination."). The reasons articulated by the ALJ in

his or her decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

The ALJ declined to afford controlling weight to Dr. Perry's conclusions because he found that they were "inconsistent with even [Dr. Perry's] own minimal findings, either on the day prior to his completion of the assessment, or at any time within his treatment records." R. at 30. The ALJ noted that Ms. Evans' medical records from the day before Dr. Perry's November 18, 2008 assessment "show the claimant appeared for examination, when the only clinical findings were tenderness at the left knee, left fifth metatarsal, lower back and right lower quadrant." *Id*. He determined that the extent of Dr. Perry's recommended restrictions were "unsupported by the lack of back pathology, knee instability, upper or lower extremity weakness or findings of more than range of motion limitation and tenderness." *Id*.

Claimant argues that the ALJ failed to articulate the specific inconsistencies between Dr. Perry's assessment and his clinical findings, and thus that his decision is not supported by substantial evidence. Claimant also contends that the ALJ failed to evaluate evidence of clinical support for Dr. Perry's assessment. The Court agrees. The ALJ's rejection of the treating physician's recommendations was conclusory and must be overruled because he does not provide specific legitimate reasons for rejecting Dr. Perry's opinion. *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988). The ALJ failed to identify particular inconsistencies within Dr.

Perry's treatment records, other than allegedly incomplete clinical findings in one physical examination of the patient on November 17, 2008.[1]  R. at 30.

The ALJ did not discuss the extensive documentation of claimant's previous treatment by Dr. Perry and other clinicians at Valley Wide Medical Centers for left knee pain and instability from an ACL tear and torn meniscus, back pain, pelvic pain, a Jones fracture to her left foot, and other health concerns.  *Compare* R. at 30 (referencing exhibits 22F and 23F) *with* R. at 422, 424, 429, 463-66, 524, 532-35, 537-544 (exhibits 9F, 11F and 20F).  He failed to note Dr. Perry's documentation of plaintiff's non-union Jones fracture during the same physical examination, instead asserting that the only clinical finding at this visit was tenderness at the fifth metatarsal. R. at 554, 27.  Nor did he account for the March 2008 AVRMC x-rays of her cervical spine, which showed mild disk space narrowing of C4-5.  R. at 511.

Rather than demonstrating substantial evidence of inconsistencies between Dr. Perry's clinical findings or the patient's treatment records and Dr. Perry's November 18, 2008 recommendations, the administrative record evidences seven separate visits by Ms. Evans with Dr. Perry prior to his November 2008 assessment.  R. at 524, 525-27, 530, 554, 556-58, 560, 581-83.  Further, Ms. Evans' medical history indicates that her treating physicians at Valley Wide had access to records of her extensive treatment history with AVRMC and Valley Wide.

---

[1] Defendants, in the Response Brief, argue that the lack of documented complaints by Plaintiff regarding her left foot at July 2008 and October 2008 visits with Dr. Perry is evidence of inconsistency to support ALJ Shaffer's controlling weight determination.  Plaintiff correctly observes that the ALJ failed to make this argument in his decision, and thus that it is an inappropriate *post hoc* rationalization that cannot be used as a basis for affirming the ALJ's decision.  **Error! Main Document Only.***Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance); *see also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").  Moreover, claimant's failure to raise complaints regarding her foot injury during these visits is unremarkable given that both visits focused on her medical concerns following and related to a failed ectopic pregnancy.  R. at 525 (patient "presents for suture removal 10 days postoperative after ectopic pregnancy removal"); R. at 556 (patient presented with pelvic pains she described as similar to those associated with her failed ectopic pregnancy, expressed concern of possible pregnancy).

*See, e.g.,* R. at 529 (progress notes by Dr. Morgenson, "Reviewed labs on AVRMC Meditech Systems, Discussed pt [illegible] Dr. Perry + Dr. Collins + reviewed U/S report."); R. at 543 (progress notes by Dr. Morgenson, "REVIEW OF PAST STUDIES").

The ALJ's decision not to afford Dr. Perry's opinions controlling weight cannot be shown to be supported by substantial evidence. The ALJ appears to have discounted Dr. Perry's opinions, including the extent of his prescribed restrictions in claimant's workplace activities, without considering the full scope of Dr. Perry's relationship with Ms. Evans.

Claimant alleges that had Dr. Perry's opinion been afforded controlling weight, and had Dr. Perry's recommended restrictions been included in the RFC, then all of the jobs found by the ALJ at step five would have exceeded Ms. Evans' exertional level. Key differences between the limitations espoused by Dr. Perry and the RFC formulated by the ALJ included: temporal limits on sitting and standing of thirty minutes at a time, as opposed to continuous sitting or standing for the full sitting or standing time period; temporal limits on sitting of a total of two rather than six hours per day; a prohibition on carrying weights over five pounds rather than ten to 20 pounds; rare rather than occasional stooping and squatting; not ever rather than occasional crawling and kneeling; and Dr. Perry's opinion that there were two to three days per week where Ms. Evans' depression would prevent her from working. R. at 30, 564-65. Because the Court finds these differences to be significant, and potentially dispositive in the disability determination, this case must be remanded for further consideration.

It is not the province of this Court to reweigh the varied medical opinions presenting in this case, nor to "substitute its judgment for that of the agency." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1998). The Court does not hold that Dr. Perry's opinion should have been afforded controlling weight. Rather, the Court remands with directions to the ALJ to ensure

adequate discussion and consideration of the extensive treatment relationship with Dr. Perry, as well as her treatment and testing at Valley Wide Medical Centers and AVRMC, in the determination of whether Dr. Perry's opinions are entitled to controlling weight.

Plaintiff also argues that Dr. Perry's recommendations, even if not controlling, should have been weighted differently based on consideration of the specific factors set forth in 20 C.F.R. § 416.927(d)(1)-(6). It would be moot to reach plaintiff's arguments regarding the appropriate weighting of Dr. Perry's recommendations if not controlling. On remand, the ALJ should specifically explain his decision on whether to include Dr. Perry's recommended restrictions in the RFC assessment. SSR 96-8p, 1996 WL 374184, at *7 (July 02, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

### Consultative Examiner, Velma Campbell, MD

Plaintiff makes numerous challenges to the ALJ's decision to afford great weight to Dr. Campbell's opinions regarding the claimant's ability to engage in activities such as walking or carrying. These challenges are not compelling. First, it is clear that the ALJ was aware that Ms. Evans did not have a significant treatment relationship with Dr. Campbell, and that Dr. Campbell's opinion pre-dated Ms. Evans' non-union Jones fracture. R. at 30. The ALJ afforded great weight to Dr. Campbell's opinion because he found it to be consistent with record evidence of several of claimant's ailments. *Id*. The court finds that these were good reasons for assigning the opinion great weight.

The ALJ expressly noted that he was persuaded that the new evidence of Ms. Evans' fractured foot would require additional accommodation, beyond the credible limitations on activity imposed by Dr. Campbell. The need for additional accommodation based on a

12

subsequent injury is not, as plaintiff asserts, a reason to reject the weight assigned to Dr. Campbell's opinion. Nor is it substantial evidence undermining the credibility of her opinion at the time it was issued. Rather, these issues go to the appropriateness of the promulgated RFC. Claimant's challenges to the ALJ's formulation of the RFC are addressed below.

Finally, plaintiff argues that the ALJ was required to weigh the opinions of Dr. Perry and Dr. Campbell against each other, rather than separately. Claimant correctly observes that the opinion of a treating physician is generally given more weight than that of the examining physician. 20 C.F.R. 416.927(d)(2). However, claimant points to no case law, and the Court can find none, requiring a formulaic relative analysis of multiple medical opinions. Failure to undertake a formal comparative weighting of the opinions does not strike this Court as a reversible error in the application of legal standards where an ALJ espouses good reasons for the weight assigned to each opinion in light of record evidence and the factors set forth in 20 C.F.R. 416.927(d)(1)-(6).

## II.     **Whether the ALJ Properly Weighted the Psychological Opinions**

<u>Whether the ALJ Applied the Correct Legal Standards in Evaluating the Opinions</u>

Claimant makes the general argument that the ALJ failed to apply correct legal standards in weighting the psychological opinions because he did not make a pro forma evaluation of each opinion using the regulatory framework set forth in 20 C.F.R. § 416.927(d). As above, a formal analysis under 20 C.F.R. § 416.927(d) is not required where the ALJ provides good reasons for his or her decision. *Oldham*, 509 F.3d at 1258.

Plaintiff also argues that the ALJ failed to address how evidence of post-traumatic stress disorder ("PTSD") was factored into the weight given to Dr. Morton's opinion. She asserts that subsequent evidence of PTSD is inconsistent with Dr. Morton's diagnosis and thus that it should

have been considered under 20 C.F.R. § 416.927(d)(4), and also that the ALJ failed to identify the source for his determination that there was later evidence of PTSD. However, it is clear that the ALJ did consider Dr. Morton's failure to make this diagnosis, because he determined that Ms. Evans' limitations in this regard were somewhat more severe than observed by Dr. Morton because of "later evidence of greater difficulties with PTSD symptoms." R. at 31. Earlier in his decision, the ALJ identified specific situational stressors that adversely affected claimant through 2008, including "losing her assistance payments and food stamps, eviction, housing problems and moving complications." R. at 28. He also observed that Ms. Evans' December 2008 presentation to Dr. Benson as "somewhat disheveled and stressed, endorsed ongoing symptoms of depression and PTSD." R. at 30. The Court finds this documentation of situational stressors to be sufficiently specific to support the ALJ's statement that Ms. Evans' PTSD symptoms increased after her evaluation by Dr. Morton.

Finally, claimant argues that the ALJ failed to properly evaluate Dr. Morton's opinions, because he did not consider "other factors" as required by 20 C.F.R. § 416.927(d)(6).[2] Specifically, plaintiff asserts that the ALJ should have discussed Dr. Morton's lack of awareness of the claimant's traumatic childhood and long history of mental health treatment in deciding how much weight to afford his opinion. The Court agrees. Dr. Morton's examination records contain only one sentence noting a history of neglect and physical and sexual abuse in her family of origin. R. at 478. By contrast, the record contains more than 175 pages of documentation regarding plaintiff's history of sexual and physical abuse and her extensive past mental health treatment, including care with several different psychoactive medications as well as early

---

[2] In the Reply brief, Plaintiff argues that the ALJ also failed properly to evaluate Dr. Morton's opinions, because he did not consider the supportability of Dr. Morton's opinions relative to Dr. Benson's as required by 20 C.F.R. § 416.927(d)(3). This argument fails because it was not raised in the opening briefs. The Court sees no reason to depart from the well-settled rule that "arguments raised for the first time in a reply brief are generally deemed waived." *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).

diagnoses of numerous psychological disorders, such as a 2002 PTSD diagnosis. R. at 242-418, 321-30. On remand, the Court directs the Commissioner to address how Dr. Morton's lack of awareness of this medical history should affect, if at all, the weighting of his opinions.

<u>Consultative Examiner David Benson, Ph.D.</u>

Next, plaintiff argues that the ALJ did not state specific, valid reasons for discounting Dr. Benson's opinion and thus that his decision to afford Dr. Benson's conclusions little weight was not supported by substantial evidence. She attacks each of the reasons the ALJ offered as a basis for discounting the "extreme conclusions" of Dr. Benson. R. at 31. First, the ALJ noted that Ms. Evans presented as "stressed" during her assessment by Dr. Benson, and that Dr. Benson did not feel that she was an "entirely reliable reporter." *Id*. Claimant argues that the ALJ did not explain how these observations make Dr. Benson's opinion less reliable or accurate. The court finds the ALJ's reasoning troubling given his own reliance on these same symptoms as evidence of claimant's greater difficulties with PTSD arising after her mental consultative evaluation by Dr. Morton. Moreover, plaintiff's argument that Dr. Benson would account for Ms. Evans' subjective statements, stress and potential unreliability in evaluating her conditions is compelling. On remand, the Commissioner should clarify why Dr. Benson's observation of these symptoms render his conclusions less credible.

The ALJ also ruled that Ms. Evans' inconsistent test performance undermined Dr. Benson's conclusions. Plaintiff argues that the ALJ failed to identify specific tests or inconsistencies, and thus that this ruling was not supported by substantial evidence. However, the ALJ devoted significant attention to the claimant's test results between 2004 and 2008 in his decision, offering substantial support for his findings in this regard. R. at 28-29.

Consultative Examiner William E. Morton, Psy.D.

Plaintiff claims that the ALJ failed to provide any reasons in his decision for giving Dr. Morton's opinion "great weight" and thus that the court is not able to review this determination. While the Court finds the ALJ's discussion of the plaintiff's test results and adult mental health treatment records to be thorough, it is unclear from this discussion how the medical evidence renders Dr. Morton's conclusions more or less credible. On remand, the Commissioner should directly tie the weighting of medical and psychological opinions to the discussion of the clinical support for those opinions.

### III.     Whether the RFC was Properly Assessed

Physical and Mental Health Limitations

Plaintiff argues that the RFC promulgated by the ALJ for Ms. Evans is not based on substantial evidence. She challenges the ALJ's adjustments to Dr. Campbell's RFC to account for Ms. Evans' non-union Jones fracture of her foot, arguing that the standing, walking, carrying and lifting limitations in the RFC should reflect the full extent of Dr. Perry's recommended restrictions. A large portion of the ALJ's decision is devoted to his explanation of why he found the claimant's allegations of unrelenting pain or other physical symptomology to lack credibility. R. at 24-27. Notably, however, none of the physicians who examined her rejected her complaints of pain as unfounded, and each of the treating physicians recommended limitations on her exertional activity in the workplace. As set forth above, the ALJ must clearly articulate the basis for his decision to reject the full extent of Dr. Perry's recommended restrictions. SSR 96-8p, 1996 WL 374184 at *7. The Court expects that these issues will be resolved on remand. Similarly, the Court expects that reconsideration of the weighting of the mental health opinions

16

on remand will clarify the impacts of Ms. Evans' mental health limitations on her individual RFC functions.

### Unskilled Work

Plaintiff challenges the ALJ's determination that Ms. Evans could perform unskilled work by arguing that the ALJ failed to provide substantial evidence in support of this determination, impeding the ability of the Court to review this finding.  However, it is clear from the ALJ's decision and the record that the skill level at which Ms. Evans could perform—SVP one versus SVP two—was determined by the Vocational Expert, Martin Rower, who testified that a person of the same age, education, vocational history and RFC as the Claimant could perform at a skill level of SVP two.  R. at 32, 62.  The ALJ's opinion that Ms. Evans can perform unskilled work was thus supported by substantial evidence to the extent that the RFC is a valid assessment of her functional capacity.  Reconsideration of the opinions of claimant's medical providers could lead to a different RFC assessment for claimant on remand and may require new findings as to her capabilities in the workplace.

### Borderline Personality Disorder and Disorder of Written Expression

Finally, claimant alleges that the ALJ failed to adjust Ms. Evans' RFC to account for Dr. Benson's diagnosis of her Borderline Personality Disorder and Disorder of Written Expression, which the ALJ found to be severe impairments.  R. at 22.  As above, it is not clear why the ALJ accepted Dr. Benson's diagnoses of these impairments and Ms. Evans' PTSD in identifying Ms. Evans' impairments when he afforded little weight to Dr. Benson's overall conclusions.

It is also unclear how the ALJ's consideration of these impairments contributed to his formulation of Ms. Evans' RFC, if at all.  Defendant asserts that claimant's limitation to unskilled work took into account her severe borderline intellectual functioning and disorder of

17

written expression. The record indicates that the ALJ clearly considered test results demonstrating that claimant functioned at a first to sixth grade reading level and had impaired spelling capabilities. *See* R. at 28-29. However, defendant fails to address plaintiff's argument that all but one of the jobs the VE found Ms. Evans could perform require writing skills in excess of her actual capacity. The transcript from the February 2009 hearing before the ALJ does not indicate that the Vocational Examiner was aware of or considered claimant's limitations in this regard. Rather, the ALJ asked the VE to assume that the work "would be unskilled, subject to decreased interpersonal contact with coworkers, the general public, and employers, all at the moderate level. She would have moderate impairment as to sustaining concentration, focus and attention, **no others**." R. at 61-62 (emphasis added). This record does not provide credible evidence that Ms. Evans, given her disorder of written expression, is capable of the work the VE opined a person of claimant's age, education, vocational history and RFC could perform.

**Order**

The decision of the ALJ is reversed. The case is remanded to the Commission for further proceedings before the ALJ and particularly for reconsideration of steps four and five based on all currently available evidence.

DATED this 3rd day of January, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge